UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE PAYMENT CARD INTERCHANGE FEE AND MERCHANT DISCOUNT ANTITRUST LITIGATION | Case No: 14-MD-01720 (JG) (JO) |
| This Document Applies to: *Salveson, et al. v. JP Morgan Chase & Co., et al.* | Case No: 1:14-cv-03529 (JG) (JO)<br><br>PLAINTIFFS' SUR-REPLY MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT |

I. **THE CARDHOLDERS SUFFERED IMPACT AND INJURY IN INFLATED INTERCHANGE FEES THAT FLOW FROM THE DEFENDANT ISSUER BANKS' PRICE-FIXING CONSPIRACY**

The Complaint alleges that Defendant Issuer banks, J.P. Morgan Chase & Co., Bank of America, N.A., Capital One, HSBC and their affiliates entered into illegal, written price-fixing agreements, including written membership agreements and perpetual license agreements, that fix the Interchange fees paid by cardholders, (Compl. ¶¶ 39, 40-50), and colluded in imposing "plus factors," in the form of anticompetitive anti-steering restraints, such as "No Discount Rules," "No Surcharge Rules," "Honor All Cards Rules," exclusionary rules and other trade restraints, (Compl. ¶¶ 5, 51-68, 70, 102) as well as the finding of their prior violation of Section 1 of the Sherman Act (Compl. ¶¶ 49-50), and their collusion to keep the price-fixed Interchange Fees hidden from their cardholders. (Compl. ¶¶ 101-103) *Starr v. Sony BMG Music Entm't*, 592 F.3d 314, 327 (2d Cir. 2010) ("defendants' attempt to hide" terms evidences conspiracy.)  In *Anderson News, LLC v. American Media, Inc.*, 680 F.3d 162, 184 (2d Cir. 2012), the Second Circuit stressed that the allegations of the Complaint are to be taken as true on a Rule 12(b)(6) motion, stating:

> However, to present a plausible claim at the pleading stage, the plaintiff need not show that its allegations suggesting an agreement are more likely than not true or that they rule out the possibility of independent action.

In vacating a summary judgment in *In re Publication Paper Antitrust Litigation*, 690 F.3d 51,

67 (2d Cir. 2012), the Second Circuit said:

> Price-fixing agreements are 'conclusively presumed to be unreasonable and therefore illegal' precisely because of their 'pernicious effect on competition' and lack of any redeeming value. *N. Pac. Ry. Co. v. United States*, 356 U.S. 1, 5, 78 S.Ct. 514, 2 L.Ed.2d 545 (1958) – i.e. because such agreements are so likely to result in artificially higher prices being charged to consumers without accomplishing any legitimate business purpose. Therefore, the demonstrable existence of an agreement between Korhonen and Tynkkynen to follow price increases announced by competitors, if proven, *constitutes strong evidence that the alleged agreement caused at least some element of the subsequent price increases* (e.g. amount or effective date), or at a minimum, the inability of plaintiffs to negotiate below the list price. (Emphasis supplied).

Under the Second Circuit's formulation, price-fixing agreements, such as the Interchange fee price-fixing agreement, constitute strong evidence that the alleged Interchange fee agreement caused impact and injury to cardholders.

**II. THE CARDHOLDER HAS STANDING AS A DIRECT PAYOR OF INFLATED INTERCHANGE FEES TO HER CARD ISSUER BANK OUT OF HER ACCOUNT LOCATED AT HER CARD ISSUER BANK**

The cardholder suffers the first direct injury and impact at the moment her Issuer bank pays itself the inflated Interchange fee right out of the cardholder's account since she "paid more than [she] would have paid in the absence of such antitrust violations." (Compl. ¶¶ 104, 105), which gives the cardholder, who is in direct privity with her Issuer bank through card issuance under the cardholder agreement, standing to sue her Issuer bank for agreeing with the other banks to fix the Interchange Fees. *Reiter v. Sonotone*, 442 U.S. 330, 339-40 ((1979). In fact, ¶ 49 of the Complaint quotes *United States v. Visa U.S.A., Inc. et al.*, 344 Fd.3d 229, 235 (2d Cir. 2003), after 34 days of trial as follows:

> The Issuer then pays the acquiring bank the amount requested, **less what is called an "interchange fee."** (Emphasis supplied).

Because the Issuer bank pays itself the inflated Interchange Fees from the cardholder's account *first* before paying *the balance* to the acquirer bank and the merchant, the cardholder has standing as the first direct payor of inflated Interchange fees to her Issuer bank, and the acquirer bank and his merchant are secondary, downstream recipients of the balance. *Illinois Brick v. Illinois*,

2

431 U.S. 720 (1977). In *Anderson News, LLC v. American Media, Inc.*, 680 F.3d 162, 184 (2d Cir. 2012), the Second Circuit stressed that the allegations of the Complaint are to be taken as true on a Rule 12(b)(6) motion, stating:

> The choice between two plausible inferences that may be drawn from factual allegations is not a choice to be made by the court on a Rule 12(b)(6) motion.

In *In re DDAVP Direct Purchaser Antitrust Litigation*, 585 F.3d 677, 688-690 (2d Cir. 2009) *cert denied* 130 S.Ct. 3305 (2010), the court reversed a dismissal on the ground of standing where a consumer alleged a fraud on the patent office antitrust claim, holding that a claim of supra-competitive overcharges as the result of defendant's anticompetitive conduct is "of a type the antitrust laws were intended to prevent" per *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977). The Second Circuit concluded that plaintiff had standing: First, "even though the plaintiff's injuries were derivative of the direct harm experienced by the defendants' competitors, harming the competitors was simply a means for the defendants to charge the [consumer] plaintiffs higher prices"; Second, consumers are "significantly motivated [to enforce the antitrust laws] due to their 'natural economic self-interest' in paying the lowest price possible," distinguishing *Paycom Billing Servs., Inc. v. MasterCard Int'l*, 467 F.3d 283, 286-87 (2d Cir. 2006) as calling for *an* entity most motivated by self-interest, not *the* entity most motivated by self-interest; ( *In Arroyo-Melecio v. Puerto Rican Am. Ins. Co.*, 398 F.3d 56, 72 (1st Cir. 2005), the Court stated that "consumers… are presumptively favored as appropriate plaintiffs to assert antitrust injury."); Third, as to speculativeness in proving damages due to the difficulty in measuring the effects of generic competition, the court said the effects can be "sufficiently estimated and measured…especially when the most elementary conceptions of justice and public policy require that the wrongdoer shall bear the risk of the uncertainty which his own wrong has created. *Bigelow v. RKO Radio Pictures*, 327 U.S. 251, 265, 66 S. Ct. 574, 90 L.Ed.2d 652 (1946);" Fourth, as to duplicative recovery[1], "[e]ven

---

[1] Defendants' acknowledgment in footnote 5 of their Reply Brief that "even merchants lack standing" undermines any duplicative argument. Defendants' contention that acquirer banks are motivated to sue is even less plausible since the Complaint alleges they are member banks in the conspiracy. (Compl. ¶39).

3

assuming some overlap between lost profits and overcharges …, the two are conceptually different measures that we think can be fairly apportioned in order to avoid duplicative recoveries." In the instant case, the damages can likewise be fairly apportioned, and also since ¶ 6 of the Complaint alleges that "the supracompetitive Interchange fees… are *traceable* through the application of economic analyses to the computerized bank records of Defendants" and their co-conspirators.

### III. BY COLLUDING TO DIMINISH THE CARDHOLDERS' MONEY AND THE VALUE OF THEIR CARDS, DEFENDANT BANKS' CAUSED INJURY TO THEIR CARDHOLDERS IN THE CARD MARKET

The Complaint alleges that, in furtherance of their conspiracy to fix Interchange fees, Defendant Issuer banks, agreed and colluded in imposing "plus factors", in the form of anticompetitive anti-steering restraints, such as "No Discount Rules," "No Surcharge Rules," "Honor All Cards Rules" etc. (which mandate concealment of Visa and MasterCard Interchange Fees from Cardholders)." (Compl. ¶¶ 5, 51-68, 70, 102). The Complaint further alleges:

> "[T]he combination, agreement and conspiracy is aimed at restraining competition, from competing with the price-fixed Interchange fees, and in fact harms competition by: a. Causing increased prices for Interchange Fees; b. Denying consumers information about the relative cost of Defendants J.P. Morgan Chase, Bank of America, Capital One, and HSBC payment card usage compared to other payment card usage that would cause more consumers to choose lower cost payment methods; c. Harming the competitive process and disrupting the proper functioning of the price-setting mechanism of a free market etc." (Compl. ¶ 101).

The Complaint also alleges: "Although Defendants disclose their finance charges to Cardholders, they uniformly do not disclose their Interchange Fees to Cardholders, in their Cardholder disclosure statements in furtherance of the conspiracy." (Compl. ¶¶101-103). By conspiring to fix Interchange fees, Defendant Issuer banks "injured" their cardholders by "diminish[ing]" their "money" *Reiter v. Sonotone*, *supra*, at 339, and by colluding to deny Cardholders information about Interchange Fees and the relative costs of card usage, Defendant Issuer banks have "diminish[ed] the present value of the cards offered to the cardholders." *Ross v. J.P. Morgan Chase & Co.; Bank of America, N.A. (USA); Capital One Bank; HSBC Finance Corporation et al.*, 524 F.3d 217, 223-224 (2d Cir. 2008). ("The reduction in choice and diminished quality of credit services to which the cardholders claim they have been subjected are present anti-

4

competitive effects that constitute Article III injury in fact."); *In re Payment Card Interchange & Merchant Discount Antitrust Litig.*, No. 05-MD-1720 (JG)(JO) at p. 28; 2013 WL 6510737 (E.D.N.Y. Dec. 13, 2013 (denoting "…cards' diminished value to the holders.").

## IV. CONCLUSION

Plaintiffs respectfully request that the Court deny Defendants' Motion to Dismiss Plaintiffs' Complaint.

Respectfully submitted,

Dated: July 11, 2014          **ALIOTO LAW FIRM**

By:  */s/ Joseph M. Alioto*
     JOSEPH M. ALIOTO
     Attorneys for Plaintiffs

Dated: July 11, 2014          **LAW OFFICES OF LINGEL H. WINTERS**

By:  */s/ Lingel H. Winters*
     Lingel H. Winters, Esq.
     Attorneys for Plaintiffs