| | |
|---|---|
| UNITED STATES DISTRICT COURT<br>EASTERN DISTRICT OF NEW YORK | FOR ONLINE PUBLICATION ONLY |

MELVIN SALVESON, EDWARD
LAWRENCE, DIANNA LAWRENCE and
WENDY M. ADAMS, on behalf of themselves
and all others similarly situated,

                              Plaintiffs,

    – versus –

JP MORGAN CHASE & CO.; J.P. MORGAN
BANK, N.A.; BANK OF AMERICA CORP.;
BANK OF AMERICA N.A.; CAPITAL ONE
F.S.B.; CAPITAL ONE FINANCIAL CORP.;
CAPITAL ONE BANK; HSBC FINANCE
CORP.; HSBC BANK USA N.A.; HSBC
NORTH AMERICAN HOLDINGS, INC.;
HSBC HOLDINGS, PLC,

                              Defendants.

MEMORANDUM
AND ORDER
14-CV-3529 (JG)

A P P E A R A N C E S

    ALIOTO LAW FIRM
        1 Sansome Street
        35th Floor
        San Francisco, CA 94104
    By:    Joseph M. Alioto, Sr.

    LAW OFFICES OF LINGEL H. WINTERS
        275 Battery Street, Suite 2600
        3rd Floor
        San Francisco, CA 94111
    By:    Lingel Hart Winters

        *Interim Co-Lead Counsel for Plaintiffs*

    SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
        4 Times Square
        New York, NY 10036
    By:    Timothy Alan Miller
               Boris Bershteyn

        *Attorneys for Defendants JP Morgan Chase & Co.*
        *and J.P. Morgan Bank, N.A.*

>MORRISON & FOERSTER
>    250 West 55 Street
>    New York, NY 10019
>By:   Jeffrey K. Rosenberg
>       Mark P. Ladner
>       Michael B. Miller
>
>    *Attorneys for Bank of America Corp. and Bank of America N.A.*
>
>O'MELVENY & MYERS LLP
>    Two Embarcadero Center
>    28th Floor
>    San Francisco, CA 94111
>By:   Matthew David Powers
>       Abby F. Rudzin
>       Andrew J. Frackman
>
>    *Attorneys for Capital One F.S.B., Capital One Financial Corp., and Capital One Bank*
>
>WILMER CUTLER PICKERING HALE AND DORR
>    950 Page Mill Road
>    Palo Alto, CA 94304
>By:   Michael A. Mugmon
>       David S. Lesser
>
>    *Attorneys for HSBC Finance Corp., HSBC Bank USA N.A., HSBC North American Holdings, Inc., and HSBC Holdings PLC*

JOHN GLEESON, United States District Judge:

       The plaintiffs bring this antitrust class action pursuant to Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15, 26, on behalf of a putative nationwide class of payment cardholders. They allege that the defendants conspired to fix interchange fees in violation of the Sherman Act, 15 U.S.C. § 1. The defendants have moved to dismiss the complaint, asserting that the plaintiffs lack standing to bring their antitrust claim, and that the claim is barred by the *Illinois Brick* doctrine. *See Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977). For the reasons that follow, the motion is granted.

BACKGROUND

A. *Procedural History*

The plaintiffs filed their complaint on December 16, 2013 in the Northern District of California, three days after I granted final approval of the settlement in the antitrust class action *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation* ("*Interchange*"). 986 F. Supp. 2d 207 (E.D.N.Y. 2013); *see* ECF No. 1 ("Compl."). In that case, 40 class action complaints, together with 19 individual actions, were consolidated before me by the Judicial Panel on Multidistrict Litigation. *See Interchange*, 986 F. Supp. 2d at 212. *Interchange*'s putative nationwide class of some 12 million merchants alleged that the Visa and MasterCard payment networks, as well as issuing and acquiring banks – including nearly all of the defendants in this case[1] – conspired to fix interchange fees in violation of the Sherman Act, 15 U.S.C. § 1. The settlement I approved calls for, *inter alia*, injunctive relief in the form of various network rules changes, which apply to all members of a Rule 23(b)(2) class. The changes reform rules that operated to "insulate the Visa and MasterCard networks from competition with each other, from other brands and from other forms of payment, allowing Visa and MasterCard and the issuing banks to set supracompetitive default interchange fees." *Id.*

The Judicial Panel on Multidistrict Litigation transferred this case to me for inclusion in the *Interchange* docket on June 4, 2014, citing its prior order holding that this court was the proper forum for actions alleging antitrust violations related to interchange fees. ECF No. 61 (citing *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*, 398 F. Supp. 2d 1356, 1358 (J.P.M.L. 2005)).

---

[1] Defendants JP Morgan Chase & Co., Bank of America Corp., Bank of America N.A., Capital One F.S.B., Capital One Financial Corp., Capital One Bank, HSBC Finance Corp., HSBC Bank USA N.A., and HSBC North American Holdings, Inc. were also defendants in the *Interchange* case.

    B.    *Factual Background*

The plaintiffs allege that the defendants – financial institutions that issued Visa and/or MasterCard payment cards – knowingly participated in a conspiracy to fix interchange fees. The putative class consists of cardholders of payment cards issued by the defendants and used to purchase goods and services from merchants. They contend that cardholders have been injured by the defendants' conduct because they have "paid supracompetitive price-fixed Interchange Fees to Defendants" that were higher "than they would have paid in the absence of [the defendants'] antitrust violations." Compl. ¶¶ 104-05. Interim class counsel argued at a July 18, 2014 proceeding that cardholders, as the first and only link in the credit card transaction chain to actually make a payment, pay the interchange fees charged for each transaction directly. *See* No. 14-md-1720, ECF No. 104 (Jul. 18, 2014 Proceedings Tr.) at 62, 64.

A credit card transaction using the Visa or MasterCard network is structured as follows: When a cardholding consumer uses a Visa or MasterCard payment card, the merchant that accepts the card relays the transaction to its "acquiring bank," which in turn transmits it to the network, *i.e.*, Visa or MasterCard, which sends the information to the cardholder's "issuing bank." Compl. ¶ 49 (quoting *United States v. Visa U.S.A., Inc.*, 344 F.3d 229, 235 (2d Cir. 2003)). The issuing bank may approve the transaction and the approval is conveyed to the acquiring bank, which relays it to the merchant. *See id.* The issuing bank then sends the acquiring bank the amount of the purchase price minus an interchange fee. *See id.* The defendants in this case are issuing banks.

## DISCUSSION

    A.    *Legal standard*

"To survive a motion to dismiss, a complaint must contain sufficient factual

matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Allegations in a typically complex antitrust suit "must be enough to raise a right to relief above the speculative level" to justify "the potentially enormous expense of discovery" in such cases. *Twombly*, 550 U.S. at 555, 559. Allegations constituting mere "labels and conclusions" or "naked assertions devoid of further factual enhancement" are insufficient. *Iqbal*, 556 U.S. at 678 (citations omitted). I draw all reasonable inferences in the plaintiffs' favor. *See Sheppard v. Beerman*, 18 F.3d 147, 150 (2d Cir. 1994), *cert. denied*, 513 U.S. 816 (1994).

      B.    *Indirect Purchasers and Illinois Brick*

In *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977), the Supreme Court held that indirect purchasers – individuals or entities that do not make purchases directly from the defendants alleged to have violated antitrust laws – do not have standing to sue under § 4 of the Clayton Act. "The Court concluded that direct purchasers rather than indirect purchasers were the injured parties who as a group were most likely to press their claims with the vigor that the § 4 treble-damages remedy was intended to promote." Blue Shield of Virginia v. *McCready*, 457 U.S. 465, 474 (1982). Thus, "a bright line rule emerged from *Illinois Brick*: only direct purchasers have standing under § 4 of the Clayton Act to seek damages for antitrust violations."[2] *Delaware Valley Surgical Supply Inc. v. Johnson & Johnson*, 523 F.3d 1116, 1120-21 (9th Cir. 2008).

---

[2] The Supreme Court recognized two possible exceptions to the *Illinois Brick* rule, neither of which applies in this case. These exceptions might allow indirect purchasers to sue when: (1) they have a preexisting cost-plus contract with the direct purchaser, *see Illinois Brick*, 431 U.S. at 736, *Hanover Shoe, Inc. v. United Shoe Machinery Corp.*, 392 U.S. 481, 494 (1968); or (2) where a direct purchaser is owned or controlled by its customer or where the defendant owns or controls the intermediary, *In re Microsoft Corp. Antitrust Litig.*, 127 F.Supp.2d 702, 713 (D. Md. 2001), *supplemented*, MDL-1332, 2001 WL 137254 (D. Md. Feb. 15, 2001), *aff'd sub nom. Kloth v. Microsoft Corp.*, 444 F.3d 312 (4th Cir. 2006).

There are two rationales for the *Illinois Brick* rule: (1) allowing both direct and indirect purchasers to claim damages based on the same antitrust violations "would create a serious risk of multiple liability for defendants," *Illinois Brick*, 431 U.S. at 730, and (2) the complex process of apportioning antitrust damages between direct and indirect purchasers would both increase litigation burdens and diminish the benefits of bringing treble-damages actions, potentially undermining the enforcement of antitrust laws via private actions, *id.* at 745-47.  For these reasons, there is a strong presumption against § 4 recovery for plaintiffs who "are not the immediate buyers from the alleged antitrust violators" – even in cases in which immediate buyers "pass on 100 percent of their costs to their customers."  *Kansas v. Utilicorp United, Inc.*, 497 U.S. 199, 207-08 (1990); *see also Paycom*, 467 F.3d at 285-88 (affirming dismissal of antitrust claim against MasterCard's chargeback policy by merchant that processed payments for website operators).

    C. *Analysis*

The plaintiffs claim that because pay for each of their credit card transactions, they have sufficiently alleged they are direct purchasers – that is, they directly paid supracompetitive, fixed and inflated interchange fees to the defendants.   I disagree and hold that the plaintiffs' allegations require the dismissal of their federal claim pursuant to *Illinois Brick*.

The markets for general purpose payment cards and for payment card network services are separate and distinct, and payment-card consumers are considered to participate only in the former.  "Whereas in the market for general purpose *cards*, the issuers are the sellers, and cardholders are the buyers, in the market for general purpose card *network services*, the four networks themselves are the sellers, and the issuers of cards and merchants are the buyers."  *See United States v. Visa U.S.A., Inc.*, 344 F.3d 229, 239 (2d Cir. 2003) (emphasis in original).

Because the interchange fee runs between financial institutions within the card services market, consumers do not directly pay interchange fees and are not directly injured by their imposition. The plaintiffs' facile contention that cardholders pay interchange fees directly is refuted by their own allegations about how transactions over these two networks occur. It also bears no resemblance to the transaction structure at the heart of this nine-year-old case.

The specter of duplicative recovery underlying *Illinois Brick* looms large in this case. The ongoing *Interchange* litigation brought by merchants who pay interchange fees demonstrates that if indirect purchasers such as the plaintiffs are also able to recover on the same or similar antitrust claims, the double payment of damages may be inevitable for the defendants. Indeed, even plaintiffs' counsel could not bring himself at oral argument to say that the merchants are without an antitrust claim against these defendants.[3]

Moreover, "[d]ismissal is the right result here, given the Supreme Court's concern with avoiding, in private federal antitrust cases, complicated problems of tracing and apportionment of damages. When an antitrust violator and a plaintiff are separated by more than one transaction, the possible causes of economic loss in each transaction multiply, presenting a challenge for the plaintiff looking to trace her injury to the antitrust violation." *Temple v. Circuit City Stores, Inc.*, 06-CV-5303, 2007 WL 2790154 (E.D.N.Y. Sept. 25, 2007) (citing *Utilicorp United*, 497 U.S. at 209; *Mid-Atl. Toyota Antitrust Litig.*, 516 F. Supp. 1287, 1292-93 (D. Md. 1981). Here, for example, the harm to the consumers from the antitrust violation they allege will depend on whether (and to what extent) the interchange fees charged to the merchants were passed along to the consumers.

---

[3] *See* Tr. of Proceedings dated July 18, 2014 at 67-70. Counsel's argument that "sometimes *Illinois Brick* has a – it has a very bad and seemingly unfair result," *id.* at 69, betrayed the fact that the plaintiffs' real complaint is about that case, and how it precludes the federal claim advanced here.

In sum, plaintiffs and the members of the class they seek to represent are indirect purchasers who may not bring their Sherman Act claim. Because that fact requires the dismissal of the federal claim, I need not address the defendants' other arguments in support of their motion. I decline to exercise supplemental jurisdiction over the state law claim.

## CONCLUSION

For the reasons set forth above, the motion to dismiss is granted.

So ordered.

John Gleeson, U.S.D.J.

Dated: September 26, 2014
      Brooklyn, New York