**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| | x | |
| | : | |
| **IN RE PAYMENT CARD** | : | Case No. 14-MD-01720 (MB) |
| **INTERCHANGE FEE AND MERCHANT** | : | (JO) |
| **DISCOUNT ANTITRUST LITIGATION** | : | |
| | : | |
| **This Document Applies to:** | : | |
| | : | |
| *Salveson, et al. v. JP Morgan Chase & Co., et* | : | |
| *al.*, **Case No. 1:14-cv-03529** | : | |
| | : | |
| | x | |

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS'**
**MOTION FOR RECONSIDERATION AS TO THE FEDERAL CLAIM AND IN**
**SUPPORT OF RECONSIDERATION AS TO THE STATE LAW CLAIM**

Defendants respectfully submit this Memorandum of Law in opposition to Plaintiffs'

motion for reconsideration of the dismissal of their federal claim, and in support of

Defendants' motion for reconsideration of the Court's decision to decline supplemental

jurisdiction over the state law claim, which is subject to original jurisdiction and should be

dismissed with prejudice under Rule 12(b)(6).[1]

## BACKGROUND

Plaintiffs brought this action on December 16, 2013, in the Northern District of

California on behalf of a putative nationwide class of consumer payment cardholders.  Plaintiffs

alleged that Defendants—credit card issuing banks and certain affiliates—fixed at supra-

competitive levels the so-called "interchange fees" that run between financial institutions in

connection with payment card transactions.  Plaintiffs sued three days after Judge Gleeson

approved a settlement in the long-running action involving a class of *merchants* who alleged that

they were injured by such interchange fees.  *See* Opinion and Order, ECF No. 83[2] ("Op."), at 3,

6-7.  Plaintiffs claimed that consumer cardholders alone—not merchants or financial

institutions—directly paid the interchange fees and suffered injury in connection with each card

transaction, asserting claims for violations of the Sherman Act, 15 U.S.C. § 1 *et seq*., and

California's Cartwright Act, Cal. Bus. & Prof. Code § 16720 *et seq*.

On November 26, 2014, Judge Gleeson—to whom the action was transferred by the

Judicial Panel on Multidistrict Litigation—dismissed Plaintiffs' federal claim under *Illinois Brick*

---

[1] As explained below, Defendants first raised their grounds for reconsideration of the state law
claim in a letter to the Court sent on the same day that Judgment was filed in this case.  *See*
Defs.' Letter, ECF No. 87, at 1.  Although Judge Gleeson appears to have construed Defendants'
letter as motion for reconsideration in ordering Plaintiffs to respond, for avoidance of doubt
Defendants cross-move for reconsideration as to the state law claims and file a notice of cross-
motion herewith.

[2] All citations to the ECF docket are to this case, No. 14 Civ. 3529 (E.D.N.Y.).

1

*Co. v. Illinois*, 431 U.S. 720 (1977), holding that Plaintiffs were not direct purchasers of network

services.  *See* Op. at 6-8.  Judge Gleeson explained:

> Because the interchange fee runs between financial institutions
> within the card services market, consumers do not directly pay
> interchange fees and are not directly injured by their imposition.
> The plaintiffs' facile contention that cardholders pay interchange
> fees directly is refuted by their own allegations about how
> transactions over these two networks occur. It also bears no
> resemblance to the transaction structure at the heart of this nine-
> year-old case.

Op. at 7.  The Court did not address Defendants' other arguments for dismissal and "decline[d]

to exercise supplemental jurisdiction" over Plaintiffs' California Cartwright Act claim without

further explanation.  *Id.* at 8.

On December 4, 2014—the same day Judgment was entered—Defendants sent a letter to

this Court respectfully suggesting that the Court had overlooked that it did not need to exercise

supplemental jurisdiction over the Plaintiffs' Cartwright Act claim because it actually had

original jurisdiction over that claim pursuant to the Class Action Fairness Act ("CAFA"), 28

U.S.C. § 1332(d).  Defendants requested that the Court entertain a motion for reconsideration (or

construe the letter as such a motion) and dismiss the Cartwright Act claim with prejudice under

Rule 12(b)(6).  *See* Defs.' Letter, ECF No. 87, at 1.  On December 12, Judge Gleeson ordered

Plaintiffs to respond to Defendants' letter.  *See* Order, ECF Entry dated December 12, 2014.  On

December 18, Plaintiffs filed a letter in response, as well as a motion asking the Court to

reconsider the dismissal of the federal claim.  *See* Pls.' Mot. for Reconsideration, ECF No. 91

("Pls.' Mot."), at 5.

As explained below, Plaintiffs' request for reconsideration should be denied.  The Court

correctly dismissed the federal claim, and Plaintiffs have identified no matters or controlling

authority that the Court overlooked.  On the other hand, the Court should reconsider its decision

to dismiss the California claim on subject-matter jurisdiction grounds.  The Court has original

jurisdiction over that claim and it should be dismissed with prejudice under Rule 12(b)(6) for the

reasons stated in the prior briefing on the motion to dismiss.[3]

## I.      PLAINTIFFS' MOTION FOR RECONSIDERATION AS TO THE FEDERAL CLAIM SHOULD BE DENIED.

Under Local Rule 6.3, a party may request reconsideration of a court's decision "if

counsel believes that there are 'matters or controlling decisions' that the Court overlooked."

*Staples, Inc. v. W.J.R. Assocs.*, No. 04 Civ. 904, 2007 WL 2725386, at \*1 (E.D.N.Y. Sept. 12,

2007).  The rule is "narrowly construed and strictly applied so as to avoid repetitive arguments

on issues that have been considered fully by the Court."  *Id.*  Reconsideration "should not be

granted where the moving party seeks solely to relitigate an issue already decided."  *Shrader v.

CSX Transp. Inc.*, 70 F.3d 255, 257 (2d Cir. 1995); *see also In re Houbigant, Inc.*, 914 F. Supp.

997, 1001 (S.D.N.Y. 1996) (motion for reconsideration is "not a motion to reargue those issues

already considered when a party does not like the way the original motion was resolved").

Plaintiffs' request for reconsideration should be denied because they identify nothing that

Judge Gleeson overlooked nor any error in the Court's decision to dismiss the federal claim.  The

gravamen of their motion for reconsideration is that because cardholders are supposedly the

"first payors"—*i.e.*, because the credit card payment process involves their issuing bank debiting

the retail price from their accounts—they have somehow been directly injured by the interchange

---

[3] This Court retains jurisdiction to decide motions for reconsideration notwithstanding Plaintiffs' recent filing of a notice of appeal in this action, ECF No. 95.  *See Hertzner v. Henderson*, 292 F.3d 302, 303 (2d Cir. 2002) (motion pursuant to Local Rule 6.3 counts as motion pursuant to Fed. R. App. P. 4(a)(4)(A)); Fed. R. App. P. 4(a)(4)(B)(i) ("If a party files a notice of appeal after the court announces or enters a judgment—but before it disposes of any motion listed in Rule 4(a)(4)(A)—the notice becomes effective to appeal a judgment or order, in whole or in part, when the order disposing of the last such remaining motion is entered."); *see also, e.g.*, *Smith v. City of New York*, No. 12 Civ. 8131, 2014 WL 2575778, at \*1 (S.D.N.Y. June 9, 2014).

fees that are allegedly deducted from the amount that merchants receive.  *See, e.g.*, Pls.' Mot. at

1, 5.  But Plaintiffs made this same argument to Judge Gleeson, *see* Pls.' Opp'n to Defs.' Mot. to

Dismiss, ECF No. 57, at 4-5, and he expressly considered and rejected it in correctly dismissing

their federal claim under *Illinois Brick.  See* Op. at 4 (noting Plaintiffs' argument "that

cardholders, as the first and only link in the credit card transaction chain to actually make a

payment, pay the interchange fees charged for each transaction directly"); *id.* at 6  ("The

plaintiffs claim that because [they] pay for each of their credit card transactions, they have

sufficiently alleged they are direct purchasers . . . .  I disagree.").

Courts in this Circuit do not grant reconsideration based on arguments that were

"considered and rejected" at the time of the initial decision.  *See, e.g.*, *Boyd v. J.E. Robert Co.*,

No. 05 Civ. 2455, 2013 WL 5436969, at *2 (E.D.N.Y. Sept. 27, 2013) (denying reconsideration

where "Plaintiffs' motion for reconsideration … merely attempts to relitigate and rehash

arguments already considered and rejected by the court."), *aff'd*, 765 F.3d 123 (2d Cir. 2014);

*PAB Aviation, Inc. v. United States*, No. 98 Civ. 5952 JG, 2000 WL 1240196, at *1 (E.D.N.Y.

Aug. 24, 2000) (Gleeson, J.) ("Because PAB's motion involves only reformulations of

arguments already considered and rejected, reconsideration is not warranted."), *aff'd*, 169 F.

App'x 61 (2d Cir. 2006) (summary order).  In dismissing Plaintiffs' federal claim, Judge Gleeson

correctly applied controlling Supreme Court authority, and Plaintiffs identify no basis to

reconsider.[4]

---

[4] Plaintiffs filed a declaration and exhibits in support of their motion.  *See* ECF No. 92.  The
Court should ignore these because on a motion for reconsideration "[n]o affidavits shall be filed
by any party unless directed by the Court."  Local Rule 6.3.  *See also, e.g.*, *Shamis v.
Ambassador Factors Corp.*, 187 F.R.D. 148, 151 (S.D.N.Y. 1999) (on motion for reconsideration
a party "may not advance new facts, issues or arguments not previously presented to the court"
(internal quotation marks omitted)).  But in any event nothing in the materials lends any support
to Plaintiffs' arguments, which fail as a matter of law for the reasons Judge Gleeson explained.

## II.    DEFENDANTS' MOTION FOR RECONSIDERATION AS TO THE STATE LAW CLAIM SHOULD BE GRANTED AND THAT CLAIM SHOULD BE DISMISSED WITH PREJUDICE UNDER RULE 12(B)(6).

On the other hand, Defendants have pointed to the exact type of inadvertent oversight that reconsideration is intended to remedy. Judge Gleeson "decline[d] to exercise supplemental jurisdiction" over Plaintiffs' California Cartwright Act claim after dismissing the federal claim. Op. at 8. But the Court overlooked that it had *original* jurisdiction over the Cartwright Act claim under CAFA, *in addition to* supplemental jurisdiction under 28 U.S.C. § 1367, as Plaintiffs themselves had correctly alleged in their Complaint. *See* Compl., ECF No. 1, at ¶ 8 ("This Court has subject matter jurisdiction of California law claims asserted in this action under Title 28, United States Code, Sections l332(d) and 1367, in that the amount in controversy exceeds the sum of $5 million exclusive of interest and costs, and members of the nationwide Cardholder class are citizens of states different from defendants."); *see also* 28 U.S.C. § 1332(d)(2) (providing federal Courts with "original jurisdiction" over class actions that meet its minimal diversity and amount in controversy requirements). Plaintiffs' nationwide putative class and damages claims against the diverse Defendants here satisfy CAFA's jurisdictional requirements, and no permissive or mandatory exceptions apply. *See* 28 U.S.C. § 1332(d)(3), 4(A), 4(B).

Because the Court had original jurisdiction over Plaintiffs' state law claim, it did not need to consider whether it should exercise its discretion to decline supplemental jurisdiction. *See, e.g.*, *Barrus v. Recontrust Co.*, No. C11-618-RSM, 2011 WL 2360206, at *3 (W.D. Wash. June 9, 2011) ("The Court cannot decline to exercise supplemental jurisdiction over Plaintiffs' state law claims where, as here, diversity exists as an independent basis for jurisdiction."); *Baas v. Dollar Tree Stores, Inc.*, No. C 07-03108, 2007 WL 2462150, at *4 (N.D. Cal. Aug. 29, 2007) ("[B]ecause the Court has original jurisdiction over Plaintiffs' state-law claims pursuant to

CAFA . . . . the Court need not make a determination under 28 U.S.C. § 1367 as to whether it

should decline to exercise supplemental jurisdiction over Plaintiffs' state-law claims."); *City of*

*Houston v. Cont'l Ins. Co.*, No. CIV. A. H-02-2734, 2007 WL 2173364, at *5 n.2 (S.D. Tex. July

26, 2007) ("The court . . . need not consider the . . . argument that the court should decline

supplemental jurisdiction over this claim . . ., because the court has diversity jurisdiction over the

matter."); *U.S. Neurosurgical, Inc. v. City of Chicago*, No. 02 C 4894, 2003 WL 21504338, at *8

(N.D. Ill. June 30, 2003) ("The court cannot decline to exercise supplemental jurisdiction over a

claim for which original jurisdiction is present.").

　　　In their response letter and their memorandum of law, Plaintiffs cite no contrary

authority.  They cite cases holding that "'federal courts have the discretion to decline to exercise

pendent jurisdiction over state indirect purchaser claims, even if those claims are brought in the

first instance in federal court.'"  Pls.' Letter, ECF No. 89, at 2 (quoting *United Mine Workers of*

*America v. Gibbs*, 383 U.S. 715, 725-726 (1966)).  But those cases do not speak to the situation

here, where—as Plaintiffs do not dispute (and indeed have themselves alleged)—the Court had

original jurisdiction, not merely supplemental jurisdiction.

　　　Plaintiffs otherwise argue the merits of their Cartwright Act claim, asserting that

*Associated General Contractors v. California State Council of Carpenters* ("*AGC*"), 459 U.S.

519 (1983), applies only to federal claims, not state law claims.  *See* Pls.' Letter at 2.  But the

*AGC* factors indisputably apply to California Cartwright Act claims, as briefed previously.  *See*

Defs.' Mot. to Dismiss ("Defs.' Mot."), ECF No. 38, at 6-12; *Knevelbaard Dairies v. Kraft*

*Foods, Inc.*, 232 F.3d 979, 987, 1001 (9th Cir. 2000) (holding that "[a]ntitrust standing is

required under the Cartwright Act" and explaining that "[n]othing in recent California antitrust

jurisprudence eliminates the antitrust injury requirement"); *Vinci v. Waste Mgmt.,* Inc., 36 Cal.

6

App. 4th 1811, 1814 & n.1 (1995) (applying *AGC* to Cartwright Act claim and explaining that

"[b]ecause the Cartwright Act has objectives identical to the federal antitrust acts, the California

courts look to cases construing the federal antitrust laws for guidance in interpreting the

Cartwright Act.); *Leisure Mktg., Inc. v. Camp Coast to Coast*, No. 314452, 1987 WL 92053, at

*15 (Cal. Super. Ct. Jan. 14, 1987) (applying *AGC* and holding that plaintiff had "no antitrust

standing to sue defendants for Cartwright Act violations"); *In re Credit/Debit Card Tying Cases*,

No. J.C.C.P. 4335, 2004 WL 2475287, at *3 (Cal. Super. Ct. Oct. 14, 2004) (unpublished)

("THE COURT: . . . [T]he standards in *Associated General Contractors* . . . clearly establish

minimum requirements for standing to file a lawsuit of this kind.").

Judge Gleeson did not reach the issue, but dismissal of the Cartwright Act claim is

warranted for many of the same reasons Judge Gleeson explained in rejecting the federal claim.

Most obviously, Plaintiffs fail to allege injury.  Plaintiffs' sole theory under both the federal and

state law claims is that "they were the direct payors or purchasers" of interchange fees (rather

than indirect payors), as they have "repeatedly alleged" in their Complaint and continue to press

in their motion for reconsideration.  Pls.' Mot. at 1, 4.  But Plaintiffs' buying goods from

merchants with credit cards does not make Plaintiffs direct purchasers *in the allegedly restrained*

*market* (*i.e.*, the interbank market for credit card network services).  Defs.' Mot. at 7-9; Op. at 6-

7.  For that reason, Judge Gleeson correctly held in rejected the "facile contention" that credit

card holders directly pay interchange fees.  Op. at 7.  That holding compels the dismissal of

Plaintiffs' Cartwright Act claim, just as it required the dismissal of their federal claim

Furthermore, even if Plaintiffs had alleged that they suffered *indirect* injury by virtue of

inflated prices for consumer goods and services—an allegation that Plaintiffs disavow—such an

allegation would still fail the *AGC* test.  Every *AGC* factor weighs against Plaintiffs' ability to

7

assert indirect injury.  For example, Plaintiffs do not and cannot allege how they paid more for purchases with a card when card purchasers generally pay the same retail prices as cash purchasers.  In any event, the purchase price of retail goods and services sold by merchants (in both card and cash transactions) is too remote from interchange fees to satisfy the *AGC* test.  *See, e.g.*, Defs.' Mot. at 6 & n.5.  In addition, any indirect injury theory would fail under *AGC* because non-consumer participants in card transactions would be much more effective enforcers of the antitrust laws (and in fact brought an action Judge Gleeson that has overseen for nearly a decade) (Defs.' Mot. at 9-11; Op. at 7) and any postulated damages would be both highly speculative and likely duplicative of other recoveries arising out of the same conduct (Defs.' Mot. at 11-12; Op. at 7).

Accordingly, for the reasons set forth above and in prior briefing, this Court should reconsider its dismissal of the Cartwright Act claim based on the decision to decline to exercise supplemental jurisdiction and instead dismiss that claim with prejudice pursuant to Rule 12(b)(6).[5]

## CONCLUSION

Plaintiffs' motion for reconsideration as to the federal claim should be denied, Defendants' motion for reconsideration as to Plaintiffs' state law claim should be granted, and Plaintiffs' Cartwright Act claim should be dismissed with prejudice.

---

[5] Defendant HSBC Holdings plc (incorrectly named in the Complaint as HSBC Holdings, PLC) is a foreign financial holding company and separately moved for dismissal of all claims against it for lack of personal jurisdiction.  *See* Notice of Mot. and Mem., ECF No. 48.  HSBC Holdings plc continues to assert lack of personal jurisdiction, but the Court need not address that ground because all claims against all Defendants are subject to dismissal under Rule 12(b)(6).

Dated: January 15, 2015.                          Respectfully submitted,

                                                  **WILMER CUTLER PICKERING**
                                                    **HALE AND DORR LLP**

                                                  By: /s/ David Lesser
                                                      David Lesser
                                                      7 World Trade Center
                                                      250 Greenwich Street
                                                      New York, New York 10007
                                                      Telephone: 212-230-8800
                                                      Facsimile: 212-230-8888
                                                      Email: david.lesser@wilmerhale.com

                                                      *Attorneys for Defendants*
                                                      *HSBC FINANCE CORPORATION;*
                                                      *HSBC BANK USA, N.A.; HSBC*
                                                      *HOLDINGS PLC*

                                                  **MORRISON & FOERSTER LLP**

                                                  By: /s/ Mark P. Ladner
                                                      Mark P. Ladner
                                                      Michael B. Miller
                                                      250 West 55th Street
                                                      New York, NY 10019
                                                      Telephone: (212) 468-8000
                                                      Facsimile: (212) 468-7900
                                                      Email: mladner@mofo.com
                                                      Email: mbmiller@mofo.com

                                                      *Attorneys for Defendants*
                                                      *BANK OF AMERICA CORPORATION;*
                                                      *BANK OF AMERICA, N.A.*

                                                  **SKADDEN, ARPS, SLATE, MEAGHER**
                                                  **& FLOM LLP**

                                                  By: /s/ Peter E. Greene
                                                      Peter E. Greene
                                                      Peter S. Julian
                                                      Boris Bershteyn
                                                      Four Times Square
                                                      New York, NY 10036
                                                      Telephone: (212) 735-3000
                                                      Facsimile: (212) 735-2000

9

Email: peter.greene@skadden.com
Email: peter.julian@skadden.com
Email: boris.bershteyn@skadden.com

*Attorneys for Defendants*
*JPMORGAN CHASE & CO.;*
*JPMORGAN BANK, N.A.*

**O'MELVENY & MYERS LLP**

By: /s/ Abby F. Rudzin
Andrew F. Frackman
Abby F. Rudzin
Times Square Tower
7 Times Square
New York, NY 10036
Telephone: 212-326-2000
Facsimile: 212-326-2061
Email: afrackman@omm.com
Email: arudzin@omm.com

*Attorneys for Defendants*
*CAPITAL ONE F.S.B.;*
*CAPITAL ONE FINANCIAL*
*CORPORATION; CAPITAL ONE*
*BANK*