UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| **IN RE PAYMENT CARD INTERCHANGE FEE AND MERCHANT DISCOUNT ANTITRUST LITIGATION** | **Case No:  14-MD-01720 (JG) (JO)** |
| **This Document Applies to:** *Salveson, et al. v. JP Morgan Chase & Co., et al.* | **Case No:  1:14-cv-03529 (JG) (JO)**  **ORAL ARGUMENT REQUESTED** |

**REPLY MEMORANDUM IN SUPPORT OF THE SALVESON PLAINTIFFS'
MOTION TO VACATE THE JUDGMENT AND FOR RECONSIDERATION OR
REARGUMENT
PURSUANT TO LOCAL CIVIL RULE 6.3
OF NOVEMBER 26, 2014 ORDER AND DECEMBER 4, 2014 JUDGMENT
AND
REQUEST FOR HEARING AND ORAL ARGUMENT**

JOSEPH M. ALIOTO
ALIOTO LAW FIRM
One Sansome Street, 35th Floor
San Francisco, CA  94104
Telephone:  415-434-8900
Facsimile:  415-434-9200

*Attorneys for the Salveson Plaintiffs*

**TABLE OF CONTENTS**

**INTRODUCTION**.................................................................................................... 1

**ARGUMENT**.......................................................................................................... 3

    **I.** **The "Visa Interchange Fee Flow" Document, The GAO and Fed Documents Provide Factual Enhancement and Plausibility To The Allegations In the *Salveson* Complaint That the *Salveson* Cardholder Plaintiffs Make Direct Payment Of Interchange Fees To Defendant Card Issuer Banks**.................................................. 3

**CONCLUSION** ....................................................................................................... 9

## <u>TABLE OF AUTHORITIES</u>

<u>*Cases*</u>

*Anderson News, LLC v. American Media, Inc.*,
   680 F.3d 162 (2nd Circuit 2012)................................................................................1,2

*California v. ARC America,*
   490 U.S. 93 (1989)..........................................................................................................2

*Illinois Brick Co. v. Illinois*,
   431 U.S. 720 (1977)................................................................................................passim

*Paycom Billing Serv. v. MasterCard International,*
   467 F.3d 283 (2d Cir. 2006).........................................................................................4,8


<u>*Statutes and Rules*</u>

Fed. R. Civ. P. 12(b)(6)..................................................................................................passim

**INTRODUCTION**

The *Salveson* plaintiffs file this Reply Brief in support of their Motion to Vacate the Judgment and for Rehearing and in Reply to the Opposition Brief filed by the defendant banks.

The *Salveson* plaintiffs assert that the judgment must be vacated and a rehearing must be granted and the defendants' Motion under Rule 12 to dismiss the case should and must be denied.

The ultimate question presented, which is of exceptional importance, is whether who, in this massive price fixing case, paid the interchange fee:  the consumer cardholder or the merchant?  Under Rule 12 analysis and the binding authority of the Second Circuit's decision in *Anderson*, the Court was required to accept the plaintiff's allegations as true.  The plaintiffs alleged in numerous parts of the complaint that they paid the interchange fee.  The Court had an obligation under Rule 12 analysis to accept that allegation as true, however, and instead, the Court stated that the merchants paid the interchange fees.  (Order at 7, line 7.)   The plaintiffs respectfully submit that this is clearly wrong.  Because the plaintiffs believe that the Court's statement may have been because of the plausibility requirement by the Supreme Court's decision in *Twombly,* the plaintiffs' augmented their Motion with dispositive charts by the co-conspirator Visa, the GAO (Government Accountability Office), and the Federal Reserve Bank of Virginia, all of which showed that the cardholder paid the money, which included the interchange fee.  Those charts also showed, in support of the plausibility of the allegations in the plaintiffs' complaint, that the cardholder paid the issuing bank, which kept the interchange fee and passed on the remainder to the acquiring bank, which kept its fee and in turn passed on the remainder to the merchant.  Defendants object to those charts on the ground that those charts are outside the four corners of the complaint, but so too is the notion that the merchants pay the interchange fee directly, when in fact they do not.

Furthermore, as alleged in the complaint, the plaintiff cardholders are in privity

1

with the defendant issuing banks.  Merchants are not.

Also, to the extent that the claim by the merchants constitute an alternative claim, the *Anderson* court requires, under Rule 12, that both be allowed to proceed:

> But on a Rule 12(b)(6) motion it is not the province of the court to dismiss the complaint on the basis of the court's *choice among plausible alternatives.* Assuming that Anderson can adduce sufficient evidence to support its factual allegation, the *choice between or among plausible interpretations* of the evidence will be a task for the finder of fact. (Emphasis supplied).

*Anderson News LLC v. American Media, Inc.*, 680 F.3d 162, 190 (2d Cir. 2012

Moreover, in the opinion of the plaintiffs, the Court overlooked the material fact and law that if the plaintiffs' allegations, as the first payor, were accepted as true, there would be no issue of duplicative damages, tracing, or a proper party with the proper incentive to bring such an action.  In this case, there is little doubt that a substantial amount of money was extracted from the cardholders on each and every use by them of their MasterCard/Visa logo card. After all, the interchange fee was designed in such a way that the Cardholder would be the first payor and that the money paid by the Cardholder would then be divided among the Bank and the Merchants.  Co-conspirator Visa admits this at Dkt. No. 188-2, Case 1:14-md-01720-MKB-JO, Visa flatly states: "Merchants do not pay interchange reimbursement fees…"

In addition, the merchants are entitled to sue under state law for price fixing. After *Illinois Brick*, in which all 50 states were *amici* against the direct purchaser argument, half of the states passed so-called *Illinois Brick* "Repealer Statutes," allowing indirect purchasers to sue for price fixing.  Defendants challenged those laws as being inconsistent with *Illinois Brick,* citing the Supremacy Clause and all of the reasons given by the Supreme Court in *Illinois Brick* as support for its decision, including duplicative

damages, difficulty in tracing, and the proper party with the proper incentive.  The

Supreme Court rejected those arguments and held that *Illinois Brick* did not preempt state

antitrust actions, stating:

> But *Illinois Brick,* as well as *Associated General Contractors* and *Blue Shield*, all were cases construing § 4 of the Clayton Act; in none of those cases did the Court identify a federal policy against States imposing liability in addition to that imposed by federal law.  Ordinarily, state causes of action are not pre-empted solely because they impose liability over and above that authorized by Federal law, (citations omitted), and no clear purpose of Congress indicates that we should decide otherwise in this case.

*California v. ARC America Corp.*, 490 U.S. 93, 105 (1989).

The Opposition Brief challenges none of these principles, either the material fact

or the material law.  To the extent that the charts, which were not made a part of the

*Salveson* Complaint, are deemed to be required to satisfy the plausibility, the plaintiffs

would move the Court to amend this Complaint to include those charts.


**ARGUMENT**

**I.      The "Visa Interchange Fee Flow" Document, The GAO and Fed Documents Provide Factual Enhancement and Plausibility To The Allegations In the *Salveson* Complaint That the *Salveson* Cardholder Plaintiffs Make  Direct Payment Of Interchange Fees To Defendant Card Issuer Banks**

The Visa document entitled: "Visa Interchange Fee Flow" that shows that

cardholders pay Interchange Fees directly to their defendant card Issuing banks. (**Exhibit**

**B** to Decl. Alioto is derived  from page 47 of the Merchants' Second Consolidated

Amended Class Action Complaint in Case No. 05-md-01729 E.D.N.Y. Dkt #1153) (Decl

of Jeffrey Rosenberg In support of Defendants' Request For Judicial Notice Dkt #40

Exhibit A at p.47 and **Exhibit B** to Decl. Alioto).  Visa's "Visa Interchange Fee Flow"

document contains a chart showing the flow of interchange fees, which expressly states:

3

"Cardholder pays Issuer $100," a confirmation by Visa that the "Cardholder" is the

direct payor of the total sum including Interchange Fees to her card Issuer bank. As the

Court found, the Cardholder's "issuing bank then sends the acquiring bank the amount of

the purchase price ***minus an interchange fee,"*** (Memorandum and Order p. 4) (Emphasis

added); *Paycom Billing Serv. v. MasterCard International,* 467 F.3d 283, 286 (2d Cir.

2006); thus, the Card Issuer bank keeps the Interchange fees paid to it by the Cardholder

(Emphasis added). As alleged in the Complaint and as the Visa "Visa Interchange Fee

Flow" document shows, the Cardholder makes a direct payment to her Card Issuing

Bank, from her account at her Card Issuing bank, a portion of which – the "Interchange

Fee" – her card issuing bank keeps for itself, before passing on the balance to the

merchant's Acquirer bank. Thus, Visa's "Visa Interchange Fee Flow" document makes it

clear that the Cardholder plaintiff is the direct payor of the "Interchange Fee" to her

defendant Card Issuing Bank. As Visa's "Visa Interchange Fee Flow" graphic, set forth

below states: "Cardholder pays Issuer $100," there is direct privity of contract between

the Cardholder and the Cardholder's Card Issuing bank, which is further confirmed by the

cardholder agreement issued to the Cardholder by her Card Issuing Bank.:

4



Thus, the example on the Visa document shows that the Cardholder makes a

direct payment of the $100.00 to her Card Issuer Bank, which includes the $1.65

Interchange Fee, which her Card Issuer Bank keeps, then passes on the balance - $98.35

to the merchant's Acquirer bank, through Visa. The Acquirer keeps a separate $0.45 Net

Fee for itself and passes on the balance of $97.90 to the Merchant. What Visa's "Visa

Interchange Fee Flow" document expressly shows is that the Cardholder directly pays

$100.00 to her Issuing bank, which includes the Interchange Fee, which the Issuer keeps

for itself. Thus, Visa's "Visa Interchange Fee Flow" document shows the Cardholder is

the direct payor of the Interchange Fees to its card issuer bank, who keeps the

5

Interchange Fee for itself.

Visa's "Visa Interchange Fee Flow" document is corroborated by the Government

Accounting Office (GAO)  document entitled "Transfer of Fees In a Credit Card

Transaction," (Exhibit A to the Decl. Alioto) below, which states the Cardholder "<u>pays

full amount</u> $100," then states the Issuer "<u>Keeps</u> $1.70 Interchange Fee" then through the

network passes on the balance of $98.30 to the Merchants' Acquirer bank, who keeps an

additional $0.50 "processing fee" and passes on the balance of $97.80 to the Merchant.



The "Visa Interchange Fee Flow" document (**Exhibit B** to Decl Alioto) is further

corroborated by the Federal Reserve Bank of Virginia document entitled "The Role of

Interchange Fees on Debit and Credit Card Transactions in the Payment System."

(**Exhibit C** to Decl. Alioto), below.

6



Figure 1: Typical Card Transaction

Note: Fees in this example are typical but not average. Dollar amounts, except network assessment fee, are from a similar flow chart in "Rising Interchange Fees Have Increased Costs for Merchants, but Options for Reducing Fees Pose Challenges," a Government Accountability Office report from November 2009.

* The card network assesses additional fees on the issuer and merchant.

The Federal Reserve Bank of Virginia document above states: "Cardholder pays

$100 to card-issuing bank," Card-issuing bank (Issuer) approves transaction, retains

$1.70 interchange fee, and transfers $98.30 to merchant's bank. (Acquirer); "Merchant's

bank (acquirer) retains $0.40 acquiring fee and $0.10 network assessment fee and

transfers $97.80 to merchant."

What the Visa "Visa Interchange Fee Flow" document shows, corroborated by the

GAO document and the Federal Reserve Bank document is that the *Salveson* Cardholder

plaintiff is in direct privity of contract with the defendant Card Issuer banks, J.P. Morgan

Chase, Bank of America, Capital One and HSBC, reflected in the Cardholder

Agreements issued to each Cardholder by each of the defendant Card Issuer banks.  By

contrast the merchants' contracts are with their Acquirer banks as alleged in the merchant

7

complaints[1]. *Paycom, supra,* held that merchants lacked standing to sue issuing banks and MasterCard for chargebacks because the merchants, who contracted with their acquirer banks, were not in privity with the card Issuer banks or MasterCard[2].

As an action brought by cardholders against their card Issuing banks, *Salveson et al. v. J.P. Morgan Chase & Co.*, *Bank of America*, *Capital One Bank*, *HSBC Bank U.S.A., N.A.* and affiliates alleges direct payment by cardholders to their colluding Card Issuer banks (*Salveson* Compl. ¶¶ 107-121).

Since the *Salveson* cardholders have plausibly alleged that they make direct payments to their defendant Issuer banks, with whom they are in privity, and who keep the Interchange Fees, corroborated by the Visa, GAO and Federal Reserve Bank of Virginia documents, they have standing to sue under *Illinois Brick Co. v. Illinois,* 431 U.S. 720 (1977).

The *Salveson* Complaint alleges that plaintiff cardholders are in privity with and in the same competitive market with their defendant card Issuer banks. ¶¶4, 39, 81, 82, 92-95.

---

[1] The merchants own complaints allege privity of contract between cardholders and their card Issuing banks: SCACC at ¶8h; *7-Eleven v. Visa, Inc. et al.* complaint at ¶13m 14-md-1720 Dkt #269-5 (EDNY); *American Eagle Outfitters v. Visa Inc.* complaint at ¶ 13q.; *Target Corp. v. Visa Inc.* complaint at ¶ 20.

[2] The merchants' complaints allege that the merchants are in privity of contract with their acquirer banks SCACC at ¶ 8.g.; *7-Eleven* complaint at ¶13a.; *American Eagle Outfitters Inc. v. Visa Inc.* complaint at ¶13a. ¶21 of the *Target Corp.et al. v. Visa Inc. et al.* complaint at ¶21

## CONCLUSION

For the reasons stated above, the Court should grant the *Salveson* plaintiffs

Motion for Reconsideration, deny defendants' Motion to Dismiss, and vacate the

Judgment thereon.

Respectfully submitted:
**ALIOTO LAW FIRM**

Dated:  February 5, 2015

<u>     */s/ Joseph M. Alioto*     </u>

By:  JOSEPH M. ALIOTO
ALIOTO LAW FIRM
One Sansome Street, 35th Floor
San Francisco, CA  94104
Telephone:  415-434-8900
Facsimile:  415-434-9200

*Attorneys for the Salveson Plaintiffs*

9